UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

CASE No. 1:99-cr-01-2

v.

HON. ROBERT J. JONKER

JIMMY RAY VALENTINE,

      Defendant.

_____/

## OPINION REGARDING DEFENDANT VALENTINE'S FIRST STEP ACT MOTION

## INTRODUCTION

A jury found Defendant Valentine guilty of committing a Section 841(b)(1)(A) crack cocaine offense in February 2000. The conviction happened in a different era of federal penalty and sentencing law. At the time, it was up to the Judge, not the Jury, to determine the quantity of drugs involved. So, the Indictment did not allege, and the Jury was not asked to consider, any specific quantity of narcotics attributable to Defendant Valentine. Instead Judge Enslen, who presided over Defendant Valentine's jury trial and sentencing, concluded that the quantity of crack cocaine attributable to Defendant Valentine exceeded 1.5 kilograms. This was sufficient at the time to trigger a sentencing range of 10 years minimum to life imprisonment under 21 U.S.C. § 841(b), as well as to trigger the highest possible base level offense under the guidelines. On May 19, 2000, Judge Enslen sentenced Defendant Valentine to 292 months imprisonment, the bottom end of the then mandatory guideline range. Defendant Valentine was 36 years old at the time.

The matter before the Court is Defendant Valentine's motion for modification or reduction in sentence under the newly enacted First Step Act, which provides for the retroactive application of certain sentencing reforms contained in the 2010 Fair Sentencing Act. (ECF No. 1043). The Court appointed counsel to assist Defendant Valentine with his First Step motion. Both sides have filed briefs. The government responds that Defendant Valentine is ineligible for a reduction in sentence because the judge-found quantities of crack cocaine attributable to Defendant Valentine are more than enough to meet the higher thresholds established by the Fair Sentencing Act. The defense counters that Defendant Valentine is eligible, and requests the Court exercise its discretion to reduce his sentence.

The Court finds that Defendant Valentine is eligible for relief under the First Step Act. Accordingly, the Court can and does exercise its discretion under the First Step Act to relieve Defendant Valentine of the mandatory-minimum sentence originally applicable to his crack cocaine offense, and to reduce Defendant Valentine's sentence of imprisonment to time served as provided in this Opinion and corresponding Order.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Defendant Valentine's Conviction, Sentence, and Collateral Attacks*

A Superseding Indictment charged Defendant Valentine with conspiracy to distribute and possess with intent to distribute cocaine, crack cocaine, and marijuana, in violation of 21 U.S.C. §§ 841(a), 846. Defendant, and several of his co-defendants, proceeded to trial and a two-week jury trial ensued. The Sixth Circuit Court of Appeals previously summarized the trial testimony as follows:

> Between 1991 and 1999, Kenneth, Corey, Johnny, and Jimmy Ray Valentine were involved in a large-scale drug operation in Benton Harbor, Michigan. *** During trial, Jerry Lee Butler testified that he supplied the Defendants with kilogram quantities of crack

cocaine in Mariana, Arkansas. Butler estimated that he sold approximately 50 kilograms of crack cocaine to Kenneth, Corey, Johnny, and Jimmy Ray between 1994 and 1998. Specifically, he testified that he sold between one-and-a-half and two-and-a-half kilograms to Jimmy Ray and Kenneth two or four separate times, that Jimmy Ray and Kenneth arranged for several other deliveries that Corey or Johnny would pick up, that Corey made approximately twenty trips to Arkansas to pick up one-and-a-half to three kilograms of crack cocaine at a time, and that Johnny picked up drugs on three to five occasions.

Yusef Phillips, another government witness, testified that in 1995, he partnered with the Valentines to purchase drugs from Butler. Phillips also testified that he obtained other suppliers for the Valentines: one in Michigan that supplied ounce-quantity amounts six or seven times, and one in California that supplied kilogram-quantity amounts five or six times. Overall, Phillips estimated that between 1995 and 1998, the Valentines distributed three kilograms of crack cocaine per month, roughly 75 kilograms, with about 60 kilograms coming from Jerry Lee Butler.

On February 11, 2000, the jury found Kenneth, Corey, Johnny, and Jimmy Ray guilty on one count of conspiracy to distribute and possess with the intent to distribute crack cocaine.

*United States v. Valentine*, 694 F.3d 665, 667 (6th Cir. 2012)

The case proceeded to sentencing. As previously summarized by this Court:

There were basically three disputed facts at the sentencing hearing. First, Defendant challenged the PSR conclusion that the drug quantity exceeded 1.5 kilograms of crack cocaine. Second, defendant challenged the PSR conclusion that a weapon enhancement was appropriate under the guidelines. Third, defendant challenged the PSR conclusion that a role enhancement of 4 points was appropriate. Judge Enslen rejected the quantity objection and concluded that the drug quantity did exceed 1.5 kilograms of crack cocaine, which was sufficient at the time to trigger the highest possible base level offense under the applicable guideline (LO 38). Judge Enslen accepted the defense objection to the weapon enhancement, and further found that only a 2 point role enhancement was appropriate. The net result of these determinations left Defendant with a mandatory guideline range of 292-365 months (LO 40; CH I), rather than the mandatory life guideline that would have been in effect under the PSR conclusions. Judge Enslen made it plain he thought the punishment ranges were

3

> excessive, and he ultimately imposed the lowest possible sentence of 292 months based on his findings and the mandatory guidelines in effect at the time.

(ECF No. 802, PageID.1319).

Defendant's conviction and sentence were affirmed on direct appeal. *United States v. Valentine*, 70 F. App'x 314 (6th Cir. 2003). The Sixth Circuit also rejected all but one of Defendant's collateral challenges under Section 2255 and remanded a single ineffective assistance of counsel claim for an evidentiary hearing. *Valentine v. United States*, 488 F.3d 325 (6th Cir. 2007). This Court held the evidentiary hearing and rejected the claim on its merits. (ECF No. 694).

## 2. Earlier Motions to Reduce Sentence

Following the Court's denial of Defendant Valentine's outstanding Section 2255 claim, the only remaining issue of record was Defendant's motions for a sentence reduction under the retroactive sentencing guideline amendments for certain crack cocaine offenses. For each round, however, sentencing guideline policy statements barred Defendant's ability to realize any reduction in sentence.

With respect to the first round, the Probation Office prepared a Sentence Modification Report that concluded Defendant Valentine was ineligible for consideration of a reduced sentence. This was because the quantity of crack involved was enough to trigger the same base level offense of 38 under the new guidelines for offenses involving at least 4.5 kilograms of crack. This Court disagreed and originally determined on the unique record of the case that Judge Enslen had effectively made a quantity finding that precluded additional judicial fact finding of a quantity above 1.5 kilograms. Accordingly, this Court made no new factual findings at the time, noting only that the record would have permitted Judge Enslen to make and support a variety of different

4

quantity findings. (ECF No. 802). The Court of Appeals reversed this Court's decision and concluded that new factual findings were not only possible but required under *United States v. Moore*, 582 F.3d 641 (6th Cir. 2009).

During the pendency of the appeal, Defendant filed a second motion for sentence modification (ECF No. 849), this one based on the second round of retroactive guideline amendments. The motion required the Court to engage in the same fact-finding required by the mandate of the Sixth Circuit on Defendant's motion for a reduced sentence under the first round of retroactive amendments. Based on its review of the entire file, the Court found by a preponderance of the evidence that Defendant Valentine was accountable for at least 8.4 kilograms of crack cocaine as part of the overall conspiracy. Because this meant Defendant's sentencing range under the new guidelines was the same as the sentencing range under the old guidelines, Defendant Valentine did not qualify for a retroactive sentencing reduction under either the first or the second round of retroactive guideline amendments under the terms of the applicable guideline policy statements. (ECF No. 892). The Court of Appeals affirmed the Court's decision. *United States v. Valentine*, 553 F. App'x 591 (6th Cir. 2014)

Defendant then sought a reduced sentence under the third and most recent round of retroactive guideline amendments. (ECF No. 1027). The Probation Office prepared a Sentence Modification Report that did not recommend a reduction in sentence. It construed the Court's earlier Order as supporting a finding that the Valentine organization was responsible for well over the threshold of 25.2 kilograms of crack cocaine now necessary to trigger the same base offense level originally applicable to Defendant. (ECF No. 1036). The Court denied Defendant's motion after a review of the filing, the Sentence Modification Report, and the remainder of the record,

concluding that the third round of amendments did not reduce Defendant's guideline range.[1] (ECF No. 1038). Defendant did not appeal that decision. Accordingly, now, nearly twenty years since his conviction, Defendant's conviction and sentence of 292 months remain intact.

### 3. *The Fair Sentencing Act of 2010*

Since Defendant's conviction and sentence, there has been a sea change in federal penalty and sentencing law. For one thing, the guidelines are no longer mandatory. *See United States v. Booker*, 543 U.S. 220 (2005). In addition, under a line of cases including *Apprendi v. New Jersey*, 530 U.S. 455 (2000), and *Allyne v. United States*, 570 U.S. 99 (2013), a jury, not a judge, must now find quantities beyond a reasonable doubt when they are used to impose an increased statutory minimum or maximum sentence. Moreover, as noted, the guidelines now require at least 25.2 kilograms of crack cocaine to trigger the highest base offense level of 38, while a quantity as little as 1.5 kilograms of crack would have sufficed before.

In addition, the quantity of crack cocaine required to trigger the statutory penalties has changed. As part of the intervening sentencing reforms Congress passed the Fair Sentencing Act of 2010, Pub L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act reduced the sentencing disparity between crack and powder cocaine offenses by increasing the amount of crack cocaine needed to trigger the mandatory minimums established in the Anti-Drug Abuse Act of 1986. *United States v. Blewett*, 746 F.3d 647, 649 (6th Cir. 2013) (en banc); *see also Dorsey v. United States*, 567 U.S. 260, 263-64 (2012). More specifically, the Fair Sentencing Act increased the threshold quantity in 21 U.S.C. § 851(b)(1)(A)(iii) from 50 grams or more of crack cocaine to 280 grams or more. Fair Sentencing Act at § 2(a)(1). The Fair Sentencing Act also increased the

---

[1] The Court, however, did not make any specific factual finding other than what it had found during the second round.

threshold quantity in 21 U.S.C. § 841(b)(1)(B)(iii) from 5 grams or more of crack cocaine to 28 grams or more. Fair Sentencing Act at § 2(a)(2). Today, therefore, in order to trigger the ten years to life sentencing range of Section 841(b)(1)(A)(iii) that Defendant Valentine was convicted under, the offense must involve more than 280 grams of crack cocaine.

The changes made by the Fair Sentencing Act, however, were not retroactive. *Blewett*, 746 F.3d at 650.[2] Because Defendant Valentine had been convicted and sentenced before the Fair Sentencing Act's enactment he was not, at that time, eligible for any relief.

4. ***The First Step Act of 2018***

On December 21, 2018, President Trump signed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the "First Step Act") into law. The First Step Act "modified prior sentencing law and expanded vocational training, early-release programs, and other programming designed to reduce recidivism." *United States v. Simons*, 375 F. Supp. 3d 379, 385 (E.D.N.Y. 2019). In Section 404 of the First Step Act, Congress made the Fair Sentencing Act's statutory changes for crack cocaine offenses retroactive to defendants who were sentenced before August 3, 2010:

> SEC. 404. APPLICATION OF FAIR SENTENCING ACT.
>
> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the

---

[2] In *Dorsey v. United* States, 567 U.S. 260 (2012), the Supreme Court determined that the Fair Sentencing Act applied to any defendant sentenced on or after August 3, 2010, regardless of when the offense occurred. Because Defendant Valentine was sentenced before August 3, 2010, *Dorsey* did not provide him with a pathway to any relief.

> defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.
>
> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, Pub. L. No. 115-319, § 404, 132 Stat 5194 (2018).

Accordingly, defendants who were convicted before August 3, 2010 of a crack cocaine offense for which the Fair Sentencing Act reduced their statutory penalties are now eligible for consideration of a reduced sentence. First Step Act of 2018, Pub. L. No. 115-319, § 404(a), (b), 132 Stat 5194 (2018). Whether to reduce the sentence of an eligible defendant is left to the sentencing court's discretion. *Id.* at § 404(c). No reduction is required.

## DISCUSSION

1. **Summary of the Court's Process**

In an earlier Order, this Court set out a two-step process for evaluating First Step Act motions. *See United States v. Boulding*, __ F. Supp. 3d __, No. 1:08-cr-65-01, 2019 WL 2135494, at *4 (W.D. Mich. May 16, 2019). The Court summarizes that process below.

   A. *Determining Eligibility*

The first step is determining eligibility. In *Boulding* the Court concluded that "eligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing

8

Act." *Id.* at *4. As applied to that case, this determination meant that the quantity of narcotics (whether admitted, found by a jury, or found by a court) did not factor into the question of eligibility. That holds true here as well, and it is consistent with the approach of other reviewing courts. *See, e.g.*, *Simons*, 375 F. Supp. 3d at 387 ("Any argument that Simons is ineligible for relief on the basis that his actual conduct involved distribution of '280 grams or more of cocaine base,' triggering the § 841(b)(1)(A) penalties and a 10-year minimum term of imprisonment, is unsound."); *United States v. Pierre*, 372 F. Supp. 3d 17, 22 (D.R.I. Apr. 5, 2019) ("The Court holds that, in determining whether a defendant is eligible for relief under § 404 of the First Step Act, the sentencing court should look to whether the offense of conviction was modified by the Fair Sentencing Act of 2010 to determine eligibility; it should refrain from delving into the particulars of the record to determine how this specific defendant committed his or her offense of conviction, and how those facts would have hypothetically affected the charges brought against the defendant under the new statutory regime."); *United States v. Smith*, ___ F. Supp. 3d ___, No. 7:04-CR-0072-4, 2019 WL 2092581, at *4 (W.D. Va. May 13, 2019) (Urbanski, C.J.) (collecting cases).

In so holding, the Court is not persuaded by the government's view, which ties eligibility to quantity. The Court previously acknowledged that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), have not been applied retroactively, but it noted that the cases still carry weight in making the "as if" sentencing decision a reviewing court makes under the First Step Act. *See United States v. Boulding*, ___ F. Supp. 3d ___, No. 1:08-CR-65-01, 2019 WL 2135494, at *7 n.6 (W.D. Mich. May 16, 2019). Here, there is no question that Defendant Valentine is accountable for a significant amount of narcotics. Indeed this Court's factual finding, if applicable, would more than suffice to trigger Section 841(b)(1)(A)'s

penalties under the higher thresholds of the Fair Sentencing Act. But the Court is not convinced this is what Congress intended when directing a reviewing court to reduce a defendant's sentence "as if" sections 2 and 3 of the Fair sentencing Act were in effect when the eligible defendant's sentence was imposed. Rather, in making the "as if" determination, quantity is simply not part of the equation with respect to eligibility. Eligibility instead turns entirely on the categorical nature of the prior conviction. All other issues, including the proper quantity determination, are a part of a reviewing court's discretionary call on whether to modify an eligible defendant's sentence.

### B. Determining the Scope of Relief

At the second step, a reviewing court evaluates the motion to determine whether it should exercise its discretion to reduce a defendant's sentence. This calls for a determination of the scope of the relief available. Here the Court previously determined, and reaffirms here, that the First Step Act does not provide for a plenary-resentencing. *Id.* at *5; *see also United States v. Jones*, No. 2:05-CR-29-FL-1, 2019 WL 2480113, at *2 (E.D.N.C. June 11, 2019) (noting that under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment except for a narrow range of situations, including "to the extent otherwise expressly permitted by statute," 18 U.S.C. § 3582(c)(1)(B) and holding that "[t]he First Step Act permits the court to impose a 'reduced sentence' and 'modify' the term of imprisonment under § 3582(c)(1)(B), but it does not 'expressly permit' full resentencing.").

But unlike earlier rounds of retroactive crack or other drug sentencing relief, the First Step Act does not impose any artificial or guideline limits on a reviewing court. These earlier rounds of retroactive reduction proceeded under 18 U.S.C. § 3582(c)(2) based on Sentencing Commission guideline reductions, and were therefore subject to the limitations built into that section. *See* U.S.S.G. § 1B1.10(a)(2)(B) (noting a reduction in a defendant's term of imprisonment is not

consistent with an earlier policy statement permitting a reduction if a guideline amendment "does not have the effect of lowering the defendant's applicable guideline range."). The First Step Act is different. The Sentencing Commission has nothing to do with it. Rather, Congress has directly authorized the possible reduction under 18 U.S.C. § 3582(c)(1)(B). Under that section a "court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *Id.* Because the First Step Act expressly permits courts to modify a term of imprisonment, the First Step Act serves as the basis for relief under Section 3582(c)(1)(B). The limits of 18 U.S.C. § 3582(c)(2) and the constraints of the guideline policy statements are inapplicable. The only limits found in the First Step Act are the statutory minimums of the Fair Sentencing Act's new thresholds. The sentencing guidelines inform the Court's discretion to be sure. But they do not limit the Court's discretion as they did in earlier rounds under 18 U.S.C. § 3582(c)(2). At this point the Court considers whether to reduce a sentence by looking at the factors set out in Section 3553(a), the revised statutory range under the Fair Sentencing Act, any amendments to the guideline range, and post-sentencing conduct. *Jones*, 2019 WL 2480113, at *2.

**2. Defendant Valentine is Eligible for a Reduced Sentence.**

At the first step, the Court concludes Defendant Valentine is eligible for consideration of a reduced sentence under the First Step Act. Defendant Valentine's offense was committed before the Fair Sentencing Act's enactment on August 3, 2010; he was further convicted under the enhanced penalties found in Sections 841(b)(1)(A)(iii); and those penalties were "modified by section 2 . . . of the Fair Sentencing Act of 2010[.]" He was, accordingly, convicted of a "covered offense." The categorical limitations in Section 404(c) also do not apply to Defendant Valentine. His sentence was not "previously imposed or previously reduced in accordance" with the Fair

Sentencing Act's amendments. And he has not previously moved to reduce his sentence under Section 404 of the First Step Act. Accordingly, the Court concludes that Defendant is eligible under Section 404(a) for a reduced sentence under Section 404(b).

**3. Scope of Relief**

At the second step the Court considers the scope of relief available to Defendant Valentine and then proceeds to determine by how much, if any, it should reduce Defendant's sentence. The Court begins with a guideline range comparison. The table below demonstrates the differences between the offense level calculation as to Count 1 as it existed when Defendant Valentine was originally sentenced in 2000, taking into account Judge Enslen's rulings during sentencing, and the guidelines as they exist now, taking into account the intervening drug guideline amendments and the retroactive application of the Fair Sentencing Act. The table details the guidelines applicable for a quantity of at least 8.4 kilograms of crack cocaine—the quantity that this Court found established by the entire record following remand from the Sixth Circuit.[3]

| Count 1 | Original Guidelines | First Step Act |
|---|---|---|
| Base Offense Level<br><br>*At least 8.4 Kilograms of Crack Cocaine* | Level 38 (§ 2D1.1(c)(1) (2000))<br><br>*1.5 KG or more of Crack Cocaine* | Level 36 (§ 2D1.1(c)(1) (2018))<br><br>*At least 8.4 KG but less than 25.2 KG of Crack Cocaine* |
| Adjustments for Role in Offense | +2 levels (§ 3B1.1(c)) | +2 levels (§ 3B1.1(c)) |
| **Total Offense Level** | Level 40 | Level 38 |
| **Criminal History** | Category I | Category I |
| **Guideline Range Before Consideration of Statutory Provisions** | 292 to 365 months | 235 to 293 months |

---

[3] The Probation Office used a higher quantity assessment during the third round of retroactive reductions, but the issue was never litigated and so the Court made no explicit findings on it.

12

| | | |
|---|---|---|
| **Guideline Range After Consideration of Statutory Provisions** | 292 to 365 months | 235 to 240 months[4] *21 U.S.C. § 841(b)(1)(C)* |

As the above chart demonstrates, Defendant Valentine's guideline range with respect to Count 1 is reduced from 292 to 365 months to 235 to 240 months. This is because the statutory penalties in Section 841(b)(1)(A)(iii) no longer drive Defendant Valentine's sentence. At the time of conviction and original sentence, Defendant Valentine was subject to a statutory mandate of at least ten years imprisonment and a maximum of life. Defendant's guidelines and sentence were well within that penalty range. Now, however, without any admitted to or jury found quantities, only the penalty range of Section 841(b)(1)(C) is properly in play, and it calls for a maximum of twenty years imprisonment. Therefore, when looking back and considering the sentencing array "as if" the Fair Sentencing Act thresholds were in effect, Defendant Valentine's Count 1 conviction must be limited to the penalty ranges of that Section, as explained in *Boulding*.

To be sure, the actual offense conduct quantities determined for sentencing may and do involve higher quantities—even quantities high enough under the new thresholds. But the actual offense conduct quantities only inform the Court's discretion on whether to reduce an eligible defendant's sentence; they do not substitute for a required element of the factual basis for the offense of conviction whether established by jury verdict or guilty plea.

This difference between the quantity used to support the factual basis of conviction, and the quantity determination for sentencing guidelines is a familiar and established part of federal practice. As part of a plea agreement, for example, a defendant may admit to, and the government

---

[4] The factual basis for conviction in this case did not involve any quantity determination by the jury, or any admitted quantity by Defendant. Under these circumstances, the Court applies the only statutory range of punishment supported by a jury's determination beyond a reasonable doubt, or a defendant's own admitted conduct in support of a plea. *See Boulding*, ___ F. Supp. 3d ___, 2019 WL 2135494, at *7 n.6.

may accept at plea colloquy, a quantity sufficient to trigger the minimum penalties of Section 841(b)(1)(B), even though both sides know the actual quantities for the sentencing guidelines would be high enough to trigger Section 841(b)(1)(A) thresholds. In that familiar scenario, it is not the province of the Court at sentencing to escalate the offense of conviction to Section 841(b)(1)(A) simply because the PSR quantities would support it. Rather, the Court accepts the factual basis of the conviction for what it supports, and leaves other considerations for sentencing. By the same token here, when looking back and considering the sentencing array "as if" the Fair Sentencing Act thresholds were in effect, the Court must be constrained for determining the new basis of conviction by what the defendant admitted, or the jury found, as the factual basis for the original conviction, and not by what the PSR later determined as relevant conduct for sentencing guidelines. Here, on an "as if" basis, that means Defendant Valentine's Count 1 conviction must be limited to the penalty ranges of Section 841(b)(1)(C) (maximum of 20 years imprisonment).

After its review of the record, including Defendant Valentine's post-sentencing behavior, the Court elects to exercise its discretion to reduce Defendant Valentine's sentence. In evaluating the extent of the reduction, the Court considers the guideline analysis, the factors set forth in § 3553(a), and the time Defendant Valentine has already served.[5] Considering all these factors, the court determines to reduce Defendant Valentine's sentence to time served, but no less. All other terms of the original sentence remain unchanged.

---

[5] The record reflects Defendant was detained by the Magistrate Judge on March 2, 1999 and appears to have been in continuous marshal custody since then. If so, this would mean Defendant Valentine has already served as much time as he could be subjected to under Section 841(b)(1)(C). Even so, there is no violation of any applicable statutory maximum because the Court is applying the limits on an "as if" basis. The statutory ranges actually in effect remain those specified by the original offense of conviction under Section 841(b)(1)(A): namely, 10 years to life.

The government's suggestion that a reduction is not warranted is not persuasive. To be sure, the statutory penalties did not, during Defendant Valentine's original sentencing, have a meaningful role in calculating the sentence of imprisonment. But the guidelines at that time were mandatory, and Judge Enslen made it clear that the sentence he was then-required to impose was excessive. The First Step Act allows the Court to relieve the Defendant of that excessive sentence. And contrary to the government's assertion, Defendant has not had opportunities for courts to evaluate whether sentence reductions were appropriate because each time the reviewing court was constrained by the policy statements under the guidelines. Those policy statements do not bind the Court, as they did before, in making its "as if" sentencing determination.

The First Step Act now permits the Court to impose a reduced sentence that, in the Court's mind, is more consistent with a consideration of all the 3553 factors. This sentence reflects the purposes of sentencing, including the seriousness of the offense, deterrence to others, protecting the public, respect for the law, and providing rehabilitative opportunities. With respect to his post-sentencing behavior, the probation officer has provided a report from the Bureau of Prisons reflecting no disciplinary infractions and several completed educational programs

## CONCLUSION

Defendant Valentine's pro se motion for modification or reduction of sentence under the First Step Act (ECF No. 1043) is granted to the extent detailed in this Opinion, and his term of imprisonment reduced to a total term of time served, and no less. *See United States v. Laguerre*, No. 5:02-cr-30098-3, 2019 WL 861417, at *3-*4 (W.D. Va. Feb. 22, 2019) (declining, under First Step Act, to reduce a sentence to less than time served because the need to protect the public and for deterrence directs that a defendant not be allowed to "bank time."). All other terms of the original sentence remain unchanged.

This Opinion, and accompanying Order, will take effect ten (10) days from the date of this Opinion and Order in order to permit the Bureau of Prisons to complete certain administrative requirements prior to Defendant's release.

A separate Order consistent with this Opinion shall issue.

Dated: __July 2, 2019__          /s/ Robert J. Jonker
                                               ROBERT J. JONKER
                                               CHIEF UNITED STATES DISTRICT JUDGE